Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| LUIS FRANCISCO LÓPEZ DÍAZ<br><br>Recurridos<br><br><br>v.<br><br><br>JOSÉ FRANCISCO PAGÁN VÁZQUEZ, ROSARIO APONTE UBARRI Y LA SOCIEDAD LEGAL DE GANANCIALES POR ELLOS COMPUESTA<br><br>*Peticionarios* | KLAN202500023 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br>SJ2023CV05625<br><br><br>Sobre:<br>Cobro de Dinero |

Panel integrado por su presidente, el Juez Rivera Colón, la Jueza Santiago Calderón y la Jueza Ortiz Flores[1]

Santiago Calderón, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 23 de mayo de 2025.

Comparece ante nos, el señor José F. Pagán Vázquez, la señora Rosario Aponte Ubarri y la Sociedad Legal de Gananciales compuesta por ambos (SLG Pagán-Aponte o peticionarios) mediante recurso de *Apelación* —el cual acogemos como un *Certiorari* por ser el mecanismo adecuado para la revisión del dictamen recurrido[2]— presentado el 10 de enero de 2025, para solicitarnos que revoquemos la *Sentencia*[3] emitida y notificada el 27 de septiembre de 2024, por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI o foro recurrido). Mediante el referido dictamen, el TPI declaró *Ha Lugar* una *Moción de Sentencia Sumaria*[4] en contra de la SLG Pagán-Aponte condenando al pago de doscientos treinta y

---

[1] Mediante la Orden Administrativa OATA-2025-093, se designó a la Hon. Laura I. Ortiz Flores en sustitución del Hon. Nery E. Adames Soto.
[2] Por motivos de economía procesal, conservamos la designación alfanumérica asignada por la Secretaría de este Tribunal.
[3] Apéndice del recurso de *Certiorari*, págs. 000390-000398.
[4] Apéndice del recurso de *Certiorari*, págs. 000275-000334.

nueve mil ochenta y cinco dólares con veintiocho centavos ($239,085.28), entre otras sumas, por concepto de incumplimiento de contrato y cobro de dinero respecto a un pagaré con garantía hipotecaria.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, expedimos el auto de *Certiorari* y así, **revocamos** la *Sentencia* recurrida, por los fundamentos que expondremos a continuación.

## I.

Los hechos del caso se remontan al 24 de abril de 2002, cuando ante el Notario Enrique Rafael Adames Soto (Notario Adames Soto) se suscribió una *Escritura de Compraventa y Primera Hipoteca*[5] mediante la cual el Sr. Luis Francisco López Díaz (señor López o recurrido) le vendió a la SLG Pagán-Aponte una propiedad urbana ubicada en la Urbanización R.D. Industrial Development en Carolina, por el precio de novecientos cincuenta mil dólares ($950,000.00). Asimismo, en virtud de un affidávit ante el Notario Adames Soto, la SLG Pagán-Aponte suscribió un *Pagaré*[6] a favor del recurrido por la cantidad de novecientos cincuenta mil dólares ($950,000.00) a ser satisfecho por pagos mensuales y consecutivos del principal e intereses a la parte vendedora el primer día de cada mes, comenzando el 1 de junio de 2002 y vencedero el 1 de junio de 2022.

En igual fecha, las partes suscribieron la *Escritura Número Cinco (5) Hipoteca en Garantía de Pagaré*[7] ante el Notario Adames Soto y pactaron que, la suma principal de novecientos cincuenta mil dólares ($950,000.00) con intereses a razón de ocho y medio por ciento (8 ½%) anual; (1) un crédito adicional de diez por ciento (10%)

---

[5] Apéndice del recurso de *Certiorari*, págs. 000024-000042.
[6] Apéndice del recurso de *Certiorari*, págs. 000009-000010.
[7] Apéndice del recurso de *Certiorari*, págs. 0000032-000042.

de la suma principal antes mencionada para cubrir el pago de los intereses; (2) un crédito igual que el anterior para cubrir las costas, gastos y honorarios de abogados que los deudores hipotecarios estaban supuestos a pagar en caso de una reclamación judicial de conformidad con los términos del *Pagaré*; (3) otro crédito de igual cantidad para cubrir adelantos que pudiese hacer el tenedor del *Pagaré*, constituyeron una hipoteca sobre la propiedad ubicada en la Urbanización R.D. Industrial Development en Carolina como garantía del mismo. Así pues, la mencionada escritura fue debidamente inscrita en el Registro de la Propiedad.

Ante varios incumplimientos con el pago mensual del pagaré, el señor López remitió una carta y factura el 17 de diciembre de 2014[8] a la SLG Pagán-Aponte, en la cual le solicitó que se verificaran los pagos que aparecían al descubierto en sus libros. Además, los peticionarios endosaron con su firma lo suscrito en la carta en cuanto a que cualquier pago no efectuado luego de la verificación, se añadiría al final de los años de la hipoteca para ser pagaderos al culminar la misma.

Nuevamente, el 24 de junio de 2022[9], el señor López remitió una carta en la que solicitó que se verificaran los pagos que aparecían al descubierto en sus libros, tras recibir una carta de parte de la SLG Pagán-Aponte el 31 de mayo de 2022[10] sobre el vencimiento y cancelación del pagaré garantizado con hipoteca sobre el inmueble en cuestión. Asimismo, solicitó que la información fuese certificada por un contable, sin embargo, los peticionarios no verificaron los pagos ni remitieron una certificación de su contable.

Así las cosas, el 12 de junio de 2023, el señor López presentó una *Demanda*[11] en la cual reclamó incumplimiento de contrato y

---

[8] Apéndice del recurso de *Certiorari*, pág. 000007.
[9] Apéndice del recurso de *Certiorari*, pág. 000013.
[10] Apéndice del recurso de *Certiorari,* pág. 000012.
[11] Apéndice del recurso de *Certiorari,* págs. 000001-000006.

cobro de dinero respecto a una deuda con garantía hipotecaria incurrida por la SLG Pagán-Aponte. En la misma, el recurrido reclamó que se adeudaban pagos de la hipoteca, honorarios de abogados y penalidades en concepto de pagaré hipotecario vencido. De igual modo, el recurrido sostuvo que la SLG Pagán-Aponte no efectuó un total de diecisiete (17) pagos entre los años 2002 al 2009 y que expidieron cheques sin fondo un total de doce (12) veces entre los años 2012 al 2017. Finalmente, el señor López arguyó que, los peticionarios adeudaban una cantidad total ascendiente a doscientos ochenta y tres mil trecientos ochenta y nueve dólares con noventa y ocho centavos ($283,389.98) por incumplimiento con el pago del pagaré hipotecario.

Oportunamente, el 19 de julio de 2023, la SLG Pagán-Aponte presentó su *Contestación a Demanda y Reconvención*[12]. En esta, negaron la existencia de la deuda, alegaron que las partes acordaron una reconciliación de cuenta para la cual el recurrido nombró al CPA Ángel Avilés y que, a pesar de que ellos entregaron todos los documentos requeridos por el señor López, no se concretó la reconciliación. De igual modo, la SLG Pagán-Aponte negó la existencia de gestiones de cobro extrajudiciales por parte del recurrido y reconvino por los daños, angustias mentales y daños punitivos.

Transcurrido algún tiempo e iniciado el descubrimiento de prueba, el 26 de septiembre de 2023, el señor López remitió un *Primer Requerimiento de Admisiones*[13]. Sin embargo, transcurrido el término de veinte (20) días sin que la SLG Pagán-Aponte contestara ni solicitara prórroga para contestar dicho requerimiento, el señor López solicitó al TPI que se dieran por admitidos todos los

---

[12] Apéndice del recurso de *Certiorari*, págs. 000068-000075.
[13] Apéndice del recurso de *Certiorari*, pág. 000178 y Apéndice del recurso de *Certiorari*, págs. 000186-000190.

requerimientos de admisiones. Luego de que la SLG Pagán-Aponte presentó su oposición, el 2 de noviembre de 2023, el TPI emitió una *Orden*[14] declarando *Con Lugar* la solicitud del señor López, de manera que dio por admitidos todos los requerimientos de admisiones.

Luego de varios trámites procesales, el 23 de agosto de 2024, el señor López presentó una *Moción de Sentencia Sumaria*[15] apoyada con prueba documental y una declaración jurada. En respuesta, el 22 de septiembre de 2024, la SLG Pagán-Aponte presentó una *Moción en Oposición a Sentencia Sumaria*[16]. En su oposición, los peticionarios no adjuntaron prueba documental ni declaraciones juradas.

Así las cosas, el 25 de septiembre de 2024, el TPI dictó una *Sentencia*[17] en la cual declaró *Con Lugar* la *Demanda* presentada por el recurrido. En consecuencia, condenó a la SLG Pagán-Aponte a indemnizar al señor López por la suma de doscientos treinta y nueve mil ochenta y cinco dólares con veinte y ocho centavos ($239,085.28), más intereses legales de ocho por ciento (8%) a calcularse desde el momento en que se presentó la Demanda y los honorarios de abogado pactados al diez por ciento (10%), los cuales ascendían a veinte y tres mil novecientos ocho dólares con cincuenta y tres centavos ($23,908.53). Así pues, hizo las siguientes determinaciones de hechos:

1. El día 24 de abril de 2002, fue suscrita ante el Notario Enrique R. Adames Soto, la Escritura Número Cuatro (4) del 24 de abril de 2002, en San Juan Puerto Rico, mediante la cual el demandante Luis Francisco López Díaz le vendió por el precio de $950,000.00, a los demandados José Francisco Pagán Vázquez y Rosario Aponte Ubarri la propiedad que se describe a continuación:
---URBANA: Solar marcado con el número dos (2) del plano de inscripción de la urbanización R.D. Industrial Development, radicado en el barrio Sabana Abajo del término municipal de Carolina, Puerto Rico,

---

[14] Apéndice del recurso de *Certiorari*, pág. 000230.
[15] Apéndice del recurso de *Certiorari*, págs. 000275-000334.
[16] Apéndice del recurso de *Certiorari*, págs. 000376-000386.
[17] Apéndice del recurso de *Certiorari*, págs. 000390-000398.

con un área superficial de MIL OCHOCIENTOS UNO PUNTO NOVENTA Y CINCO METROS CUADRADOS (1,801.95), en lindes: por el NORTE, en cuarenta y nueve punto quince metros (49.15) con los solares número Tres (3) y Cuatro (4) del mencionado plano; por el SUR, en treinta punto veinticinco (30.25) metros de Solar Número Uno (1) del
mencionado plano; por el ESTE, en cincuenta y siete punto noventa metros (57.90) con la Avenida denominada "Avenue Number Eighteen (18)" del mencionado plano; y por el OESTE, en treinta y cinco punto noventa y cuatro metros (35.94) con el solar Número Uno (1) del mencionado plano. ---Contiene un edificio industrial de concreto de una sola planta. ----
---Inscrito al folio ciento ochenta y cuatro (184) vuelto del tomo cuatrocientos cuarenta y cuatro (444) de Carolina, finca número cinco mil cuatrocientos tres (5,403) (antes diez mil ochocientos setenta y Uno (10,871) Registro de la Propiedad de Puerto Rico, Sección Primera (1) de Carolina. -----------------------

2. Mediante affidávit número 578 suscrito el 24 de abril de 2002, ante el Notario Enrique R. Adames Soto los demandados suscribieron Pagaré a favor del Sr. Luis Francisco López Díaz o a su orden por la suma total de $950,000.00 su orden por la suma total de $950,000.00 a ser satisfecho mediante pagos mensuales y consecutivos de principal e intereses a la parte vendedora el primer día de cada mes, comenzando el 1ro de junio de 2002, y vencedero el 1 del mes de junio de 2022, sino antes.

3. La parte demandante y las partes demandadas suscribieron ese mismo 24 de abril de 2002, <u>Escritura Número Cinco (5) Hipoteca en garantía de pagaré</u>, ante el notario Enrique R. Adames Soto.

4. Se pactó que la suma principal de $950,000.00, con intereses sobre balance insoluto de principal desde la fecha del pagaré hasta su pago, a razón del ocho y medio por ciento (8 1/2%) anual, cuya suma será pagadera en plazos mensuales en plazos mensuales y consecutivos $8,244.23, en el primer día de cada mes, comenzando el 1 de junio de 2002, o a la presentación; y si fuere puesto el pagaré en manos de un abogado para cobro, además una suma equivalente al 10% del valor del pagaré como honorarios de abogado, los que serán exigibles aún en procedimientos seguidos bajo la Ley Federal de Quiebras. Además, del acreedor hipotecario no recibir el pago del plazo que correspondan dentro del término acordado, los deudores vendrán obligados a pagar un cargo por mora del 5% del pago vencido su el atraso es por un periodo mayor de 15 días o de 4% del pago vencido en el caso del atraso por un periodo mayor de días 10 días.

5. Se pactó que, en caso de mora, el tenedor a su opción podrá poner el pagaré al cobro, por la vía judicial o de otro modo para reclamar el principal, los intereses y honorarios de abogado, sin necesidad de aviso o requerimiento así también quedan automáticamente vencidas cualesquiera otras obligaciones que tengas los suscribientes con el tenedor de este pagaré. La falta de ejercicio de este derecho, no se entenderá como una renuncia del mismo. Los firmantes, endosantes y todas las partes del pagaré, renunciaron a la presentación para pago, demanda, protesto, aviso de protesto y aviso de

falta de pago, y además, renunciaron a todo beneficio provisto por ley en cuanto a valuación, avalúo o exención. La parte tenedora podrá prorrogar el vencimiento del pagará, posponer acción en cuanto al cobro, conceder cualquier otra indulgencia y añadir o liberar para cualquier parte primariamente responsable, sin afectar, disminuir o menoscabar el derecho del tenedor en cuanto a recursos contra los firmantes, endosantes y todas las partes del Pagaré.

6. <u>La Escritura Número Cinco (5) Hipoteca en garantía de pagaré</u>, suscrita el 24 de abril de 2002, ante el Notario Enrique R, Adames Soto fue debidamente inscrita en el Registro de la Propiedad.

7. Se le proveyó a los demandados una tabla de amortización.

8. Los demandados no realizaron 17 pagos desglosados en los siguientes meses:

| 1 | Agosto 2002 | 8,244.32 |
|---|---|---|
| 2 | Septiembre 2002 | 8,244.32 |
| 3 | Noviembre 2002 | 8,244.32 |
| 4 | Junio 2003 | 8,244.32 |
| 5 | Agosto 2003 | 8,244.32 |
| 6 | Diciembre 2006 | 8,244.32 |
| 7 | Agosto 2007 | 8,244.32 |
| 8 | Septiembre 2007 | 8,244.32 |
| 9 | Octubre 2007 | 8,244.32 |
| 10 | Noviembre 2007 | 8,244.32 |
| 11 | Diciembre 2007 | 8,244.32 |
| 12 | Abril 2008 | 8,244.32 |
| 13 | Julio 2008 | 8,244.32 |
| 14 | Septiembre 2008 | 8,244.32 |
| 15 | Octubre 2008 | 8,244.32 |
| 16 | Abril 2009 | 8,244.32 |
| 17 | Septiembre 2009 | 8,244.32 |
| Total | | $140,153.44 |

9. La parte demandada no realizó los siguientes pagos, ya que entregó cheques sin fondos en el periodo comprendido entre el 2012 al 2017:

| | Núm. Cheque | Fecha: emisión | Cantidad de dinero |
|---|---|---|---|
| 1 | 14618 | 8/7/2012 | $8,244.32 |
| 2 | 14930 | 3/6/2013 | $8,244.32 |
| 3 | 15024 | 4/22/2013 | $8,244.32 |

| 4 | 15128 | 7/6/2013 | $8,244.32 |
|---|---|---|---|
| 5 | 15252 | 10/6/2013 | $8,244.32 |
| 6 | 16005 | 1/8/2014 | $8,244.32 |
| 7 | 15632 | 2/6/2014 | $8,244.32 |
| 8 | 16209 | 4/8/2015 | $8,244.32 |
| 9 | 19720 | 6/5/2017 | $8,244.32 |
| 10 | 19739 | 6/21/2017 | $8,244.32 |
| 11 | 19760 | 6/21/2017 | $8,244.32 |
| 12 | 19751 | 7/2017 | $8,244.32 |
| **Total** | | | **$98,931.84** |

10. Las partes acordaron que, de encontrarse pagos no efectuados, los mismos se añadirían al final de los años de la hipoteca. Este acuerdo se puso por escrito y se acompañó la factura fechada "diciembre 17, 2014", la que fue firmada por la Sra. Rosario Aponte Ubarri.

11. Desde el 1 de junio de 2022, los demandados cesaron de realizar los pagos de la hipoteca, dejando al descubierto los meses adeudados.

12. Los demandados adeudan en total a la parte compareciente la suma de $239,085.28, más intereses y cargos.

13. El demandante realizó las siguientes gestiones de cobro:
    a. Carta de 15 de octubre de 2013
    b. Factura 17 de diciembre de 2014.
    c. Carta de 24 de junio de 2022
    d. Carta 7 de octubre de 2022[18].

Inconformes, el 15 de octubre de 2024, los peticionarios sometieron una *Moción en Solicitud de Reconsideración bajo la Regla 47 de Procedimiento Civil; Oposición a Sentencia Sumaria Enmendada; Solicitud de Orden y Solicitud de Vista Argumentativa*[19] en la cual incluyeron prueba documental y una declaración jurada. Por su parte, el 22 de noviembre de 2024, el señor López presentó *Moción en Oposición a Reconsideración*[20] en la cual arguyó que a pesar de tener en su poder prueba de los pagos, no le correspondía presentarla.

---

[18] *Íd.*
[19] Apéndice del recurso de *Certiorari,* págs. 000401-000526.
[20] Apéndice del recurso de *Certiorari,* págs. 000538-000555.

Evaluadas las posiciones de las partes, el 11 de diciembre de 2024, el TPI emitió una *Resolución*[21] en la cual declaró *No Ha Lugar* la solicitud de reconsideración de los peticionarios.

Insatisfechos aun, la SLG Pagán-Aponte recurre ante nos y le imputa al TPI la comisión de los siguientes errores:

A. Primer Señalamiento de Error: Erró el TPI al sumariamente ordenar a la Peticionaria pagar lo ya pagado, aun cuando el propio Apelado reconoció desde su Demanda que la deuda podría ya estar salda y, posteriormente, el Demandante reconoció tener en su poder la prueba de los pagos efectuados a su favor, así como, cuando de los documentos en el caso y que fueran marcados en la Conferencia con Antelación a Juicio se desprendía claramente, que existía una clara controversia de hechos.

B. Segundo Señalamiento de Error: Erró el TPI al negarse a reconsiderar y dejar sin efecto la Sentencia, por los alegados errores procesales, de forma y contenido de escritos previos de la parte Apelante, sin evaluación en los méritos de la Solicitud de Reconsideración y los documentos que la acompañaban, pero obviando los errores del Apelado. Inclusive, a pesar del Apelado reconocer haber recibido prueba de pago de las partidas que reclamaba en su sentencia sumaria.

C. Tercer Señalamiento de Error: Erró el TPI al emitir sentencia sumaria cuando de la prueba en su expediente y expresiones del propio Apelado en su oposición a reconsideración se desprende que falta parte indispensable.

Luego de emitir una *Resolución*[22] concediéndole al recurrido hasta el 10 de febrero de 2025 para presentar su alegato, el 6 de febrero de 2024, el señor López presentó su *Oposición a la Apelación.* En su escrito el recurrido solicitó que se confirmara la determinación recurrida por razón de que la SLG Pagán-Aponte no demostró prueba alguna sobre la satisfacción de las cuantías reclamadas cuando la solicitud de sentencia sumaria quedó sometida.

Contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

---

[21] Apéndice del recurso de *Certiorari,* págs. 000562-000563.
[22] Notificada el 17 de enero de 2025.

**II.**

**-A-**

El auto de *certiorari* es un recurso procesal discrecional y extraordinario mediante el cual un tribunal de mayor jerarquía puede rectificar errores jurídicos en el ámbito de la Regla 52.1 de Procedimiento Civil, *supra*, y conforme a los criterios que dispone la Regla 40 del Reglamento del Tribunal de Apelaciones[23]. Nuestro ordenamiento judicial ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto[24]. Esta norma de deferencia también aplica a las decisiones discrecionales de los tribunales de instancia. En cuanto a este particular, el Tribunal Supremo de Puerto Rico ha expresado lo siguiente:

> No hemos de interferir con los tribunales de instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo[25].

En ausencia de tal abuso o de acción prejuiciada, error o parcialidad, no corresponde intervenir con las determinaciones del Tribunal de Primera Instancia[26]. No obstante, la Regla 52.1 de Procedimiento Civil, *supra*, faculta nuestra intervención en situaciones determinadas por la norma procesal. En específico establece que:

> [...] El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de

---

[23] 4 LPRA Ap. XXII-B, R. 40.
[24] *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994).
[25] *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).
[26] *García v. Padró,* 165 DPR 324, 334-335 (2005*); Zorniak Air Servs. v. Cessna Aircraft Co.,* 132 DPR 170, 180 (1992).

decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión[27].

[...]

En armonía con lo anterior, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, para dirigir la activación de nuestra jurisdicción discrecional en estos recursos dispone que para expedir un auto de *certiorari*, este Tribunal debe tomar en consideración los siguientes criterios:

A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se encuentra el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Por lo tanto, un *certiorari* solo habrá de expedirse si al menos uno de estos criterios aconseja la revisión del dictamen recurrido. Es decir, el ordenamiento impone que ejerzamos nuestra discreción y evaluemos si, a la luz de alguno de los criterios contenidos en la misma, se requiere nuestra intervención.

**-B-**

El mecanismo procesal de la sentencia sumaria surge de la Regla 36 de Procedimiento Civil[28]. Por medio de este mecanismo,

---

[27] 32 L.P.R.A. Ap. V, R. 52.1.
[28] 32 LPRA Ap. V, R. 36.

una parte puede solicitar que el tribunal que dicte sentencia sumaria de la totalidad de la reclamación o de parte de esta[29]. Sin embargo, la sentencia sumaria solo está disponible para la disposición de aquellos casos que sean claros; cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda; y que solo reste por disponer las controversias de derecho existentes[30].

Por su parte, el promovente de una sentencia sumaria deberá establecer, mediante declaraciones juradas o con prueba admisible en evidencia, que no existe controversia real respecto a hechos materiales de la controversia[31]. Por hechos materiales se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo[32].

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia que sea real por lo cual cualquier duda es insuficiente para derrotar una solicitud de sentencia sumaria[33]. En efecto, la duda debe ser tal que permita concluir que existe una controversia real y sustancial sobre los hechos materiales[34]. De esta manera, la parte promovida debe puntualizar los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su posición[35]. Es decir, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa"[36]. No puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer

---

[29] *Vera v. Dr. Bravo*, 161 DPR 308, 332 (2004).
[30] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994).
[31] *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 110 (2015).
[32] *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).
[33] *Meléndez González et al. v. M. Cuebas, supra*, pág. 110.
[34] *Íd.*
[35] *León Torres v. Rivera Lebrón,* 204 DPR 20, 44 (2020).
[36] *Íd.,* pág. 44.

contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa[37].

Entretanto, la Regla 36.3 de Procedimiento Civil establece el procedimiento para la consideración de la moción de sentencia sumaria, así como el contenido de la moción y de la contestación de la parte promovida[38]. Respecto a la moción solicitando que se dicte una sentencia sumaria, la Regla 36.3 (a) de Procedimiento Civil dispone que la misma tiene que desglosar lo siguiente:

> (1) una exposición breve de las alegaciones de las partes;
> (2) los asuntos litigiosos o en controversia;
> (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;
> (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
> (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y
> (6) el remedio que debe ser concedido[39].

Por otra parte, la Regla 36.3 (b) de Procedimiento Civil dispone que la contestación a la moción de sentencia sumaria debe contener, además de los sub incisos (1), (2) y (3) del inciso (a): una relación de los hechos esenciales y pertinentes que están en controversia, con referencia a los párrafos enumerados por la parte promovente y con indicación de la prueba en la que se establecen esos hechos; una enumeración de los hechos que no están en controversia; y las razones por las cuales no se debe dictar la sentencia, argumentando el derecho aplicable[40]. Asimismo, cuando se presente una solicitud de sentencia sumaria conforme a la Regla 36 de Procedimiento Civil, *supra,* "la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica como

---

[37] *Ramos Pérez v. Univisión, supra,* págs. 215-216.
[38] 32 LPRA Ap. V, R. 36.3.
[39] 32 LPRA Ap. V, R. 36.3 (a).
[40] 32 LPRA Ap. V, R. 36.3 (b).

lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede"[41].

El Tribunal Supremo de Puerto Rico ha expresado en varias ocasiones que la sentencia sumaria es un remedio extraordinario y discrecional que solo se debe conceder cuando no existe una controversia genuina de hechos materiales y lo que resta es aplicar el derecho[42]. En términos generales, al dictar sentencia sumaria, el tribunal deberá hacer lo siguiente:

(1) analizar los documentos que acompañan la solicitud de sentencia sumaria y los que se incluyen con la moción en oposición, así como aquellos que obren en el expediente del tribunal;

(2) determinar si el oponente de la moción controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos[43].

Analizados estos criterios, el tribunal no dictará sentencia sumaria cuando: "(1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material y esencial, o (4) como cuestión de derecho, no proceda"[44]. La sentencia sumaria se puede dictar a favor o en contra de la parte que la solicita, según proceda en Derecho[45].

Por tratarse de un remedio discrecional, el uso del mecanismo de sentencia sumaria tiene que ser mesurado y solo procederá cuando el tribunal quede claramente convencido de que tiene ante sí documentos no controvertidos[46]. De tal manera, solo procede dictar sentencia sumaria cuando surge claramente que el promovido por la moción no puede prevalecer bajo ningún supuesto de hechos

---

[41] 32 LPRA Ap. V, R. 36.3 (c).
[42] *Maldonado v. Cruz*, 161 DPR 1, 39 (2004).
[43] *Vera v. Dr. Bravo, supra*, 334.
[44] *Íd.*, págs. 333-334; *Acevedo Arocho v. Depto. Hacienda y otros*, 212 DPR 335, 336 (2023).
[45] *Maldonado v. Cruz, supra*, pág. 39.
[46] *Vera v. Dr. Bravo, supra*, pág. 334.

y que el tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia[47]. Cuando no existe una clara certeza sobre todos los hechos de la controversia, no procede una sentencia sumaria[48]. Cualquier duda sobre la existencia de una controversia sobre los hechos materiales, debe resolverse contra la parte promovente[49]. Toda inferencia que se haga a base de los hechos y documentos que obren en los autos, debe tomarse desde el punto de vista más favorable al que se opone a la solicitud de sentencia sumaria[50]. Así pues, tomando en consideración que la sentencia sumaria es un remedio de carácter discrecional, "[e]l sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido proceso de ley"[51].

Es importante mencionar que, este Tribunal utilizará los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una moción de sentencia sumaria[52]. Por consiguiente, los criterios que este foro intermedio debe tener presentes al atender la revisión de una sentencia sumaria son los siguientes:

(1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil y la jurisprudencia le exigen al foro primario;

(2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36;

(3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos;

(4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia[53].

---

[47] *Nieves Díaz v. González Massas*, 178 DPR 820, 848 (2010).
[48] *Metrop. de Préstamos v. López de Victoria*, 141 DPR 844 (1996).
[49] *Rosario v. Nationwide Mutual*, 158 DPR 775, 780 (2003) citando a *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, 144 DPR 563, 575 (1997).
[50] *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 610- 611 (2000).
[51] *Roig Com. Bank v. Rosario Cirino*, 126 DPR 613, 617 (1990).
[52] *Vera v. Dr. Bravo, supra*, pág. 334.
[53] *Roldan Flores v. M Cuebas*, 199 DPR 664, 679 (2018).

**III.**

Previo a atender la controversia ante nos y de acuerdo con el marco jurídico antes reseñado, la Regla 52.1 de Procedimiento Civil, *supra*, nos faculta la revisión de resoluciones dictadas por el TPI, a manera de excepción. Sin embargo, es preciso recalcar que nuestra discreción no se ejerce en el vacío. La Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, establece los criterios para nosotros determinar si debemos ejercer nuestra facultad discrecional. Evaluado el recurso ante nuestra consideración, bajo los criterios de la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, somos de la opinión de que procede la expedición del auto de *Certiorari*. Es nuestro criterio que, en la determinación recurrida medió un error craso y manifiesto por parte del TPI. Esto, debido a que, el foro recurrido adjudicó el caso por la vía sumaria, toda vez que existían hechos controvertibles.

Ahora bien, a los efectos del resultado alcanzado, basta discutir el primer señalamiento de error. En este, los peticionarios adujeron que el TPI incidió:

> [A]l sumariamente ordenar a la Peticionaria pagar lo ya pagado, aun cuando el propio Apelado reconoció desde su Demanda que la deuda podría ya estar salda y, posteriormente, el Demandante reconoció tener en su poder la prueba de los pagos efectuados a su favor, así como, cuando de los documentos en el caso y que fueran marcados en la Conferencia con Antelación a Juicio se desprendía claramente, que existía una clara controversia de hechos[54].

Por los fundamentos a continuación, le asiste la razón a la SLG Pagán-Aponte. Veamos.

Como mencionamos en la exposición del derecho, el primer y segundo paso del estándar que este Tribunal debe utilizar para revisar la concesión o denegatoria de una solicitud de sentencia sumaria es una revisión *de novo* del expediente del caso de autos y corroborar que tanto la solicitud como la oposición a sentencia

---

[54] Recurso de *Certiorari*, pág. 7.

sumaria cumplen con los requisitos de la Regla 36 de Procedimiento Civil, *supra.*

Evaluada la *Moción en Solicitud de Sentencia Sumaria* presentada por el señor *López* ante el TPI el 23 de agosto de 2024, determinamos que, esta incumplió con el requisito de forma exigido por la Regla 36.3 (a) de Procedimiento Civil, *supra*, de realizar una exposición breve de las alegaciones de las partes. Esto debido a que, el recurrido no incluyó el resumen de las alegaciones de las partes requerido por la precitada regla y solo incluyó un resumen de sus alegaciones. Por otra parte, encontramos que la *Moción en Oposición a Sentencia Sumaria* presentada por los peticionarios el 22 de septiembre de 2024, incumplió crasamente con el inciso (b)(2) de la Regla 36.3 de Procedimiento Civil, *supra*, por no indicar "los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal" para argumentar que existía controversia de hechos materiales en cuanto a la cantidad adeudada.

Respecto al tercer paso de nuestro análisis, y tras una lectura cuidadosa y detallada del expediente, la solicitud de sentencia sumaria y su oposición, determinamos que existen hechos materiales en controversia. Como adelantamos en el tracto procesal, el TPI condenó a la SLG Pagán-Aponte al pago de doscientos treinta y nueve mil ochenta y cinco dólares con veintiocho centavos ($239,085.28) por concepto de incumplimiento de contrato y cobro de dinero respecto a un pagaré con garantía hipotecaria. Del expediente ante nuestra consideración, surgió que existían copias de cheques y estados bancarios[55] que sin duda controvertían los

---

[55] Apéndice del recurso de *Certiorari,* págs. 000076-000142 y págs. 000465-000487.

"hechos incontrovertidos" presentados en la *Moción en Solicitud de Sentencia Sumaria.*

En consecuencia, erró el foro recurrido al resolver el pleito sumariamente, pues persiste una controversia de hechos que prohíbe la resolución del pleito por esta vía. Conforme a todo lo anterior, debe celebrarse una vista evidenciaria para determinar la cantidad exacta que adeudan los peticionarios.

**a. Hechos materiales que no están en controversia**:

1. El día 24 de abril de 2002, fue suscrita ante el Notario Enrique R. Adames Soto, la Escritura Número Cuatro (4) del 24 de abril de 2002, en San Juan Puerto Rico, mediante la cual el demandante Luis Francisco López Díaz le vendió por el precio de $950,000.00, a los demandados José Francisco Pagán Vázquez y Rosario Aponte Ubarri la propiedad que se describe a continuación:

---URBANA: Solar marcado con el número dos (2) del plano de inscripción de la urbanización R.D. Industrial Development, radicado en el barrio Sabana Abajo del término municipal de Carolina, Puerto Rico, con un área superficial de MIL OCHOCIENTOS UNO PUNTO NOVENTA Y CINCO METROS CUADRADOS (1,801.95), en lindes: por el NORTE, en cuarenta y nueve punto quince metros (49.15) con los solares número Tres (3) y Cuatro (4) del mencionado plano; por el SUR, en treinta punto veinticinco (30.25) metros de Solar Número Uno (1) delmencionado plano; por el ESTE, en cincuenta y siete punto noventa metros (57.90) con la Avenida denominada "Avenue Number Eighteen (18)" del mencionado plano; y por el OESTE, en treinta y cinco punto noventa y cuatro metros (35.94) con el solar Número Uno (1) del mencionado plano. ---Contiene un edificio industrial de concreto de una sola planta. -------------------------------------

---Inscrito al folio ciento ochenta y cuatro (184) vuelto del tomo cuatrocientos cuarenta y cuatro (444) de Carolina, finca número cinco mil cuatrocientos tres (5,403) (antes diez mil ochocientos setenta y Uno (10,871) Registro de la Propiedad de Puerto Rico, Sección Primera (1) de Carolina. –

2. Mediante affidávit número 578 suscrito el 24 de abril de 2002, ante el Notario Enrique R. Adames Soto los demandados suscribieron Pagaré a favor del Sr. Luis Francisco López Díaz o a su orden por la suma total de $950,000.00 su orden por la suma total de $950,000.00 a ser satisfecho mediante pagos mensuales y consecutivos de principal e intereses a la parte vendedora el primer día de cada mes, comenzando el 1ro de junio de 2002, y vencedero el 1 del mes de junio de 2022, sino antes.

3. La parte demandante y las partes demandadas suscribieron ese mismo 24 de abril de 2002, Escritura Número Cinco (5) Hipoteca en garantía de pagaré, ante el notario Enrique R. Adames Soto.

4. Se pactó que la suma principal de $950,000.00, con intereses sobre balance insoluto de principal desde la fecha del pagaré hasta su pago, a razón del ocho y medio por ciento (8 1/2%) anual, cuya suma será pagadera en plazos mensuales en plazos mensuales y consecutivos $8,244.23, en el primer día de cada mes, comenzando el 1 de junio de 2002, o a la presentación; y si fuere puesto el pagaré en manos de un abogado para cobro, además una suma equivalente al 10% del valor del pagaré como honorarios de abogado, los que serán exigibles aún en procedimientos seguidos bajo la Ley Federal de Quiebras. Además, del acreedor hipotecario no recibir el pago del plazo que correspondan dentro del término acordado, los deudores vendrán obligados a pagar un cargo por mora del 5% del pago vencido su el atraso es por un periodo mayor de 15 días o de 4% del pago vencido en el caso del atraso por un periodo mayor de días 10 días.

5. Se pactó que, en caso de mora, el tenedor a su opción podrá poner el pagaré al cobro, por la vía judicial o de otro modo para reclamar el principal, los intereses y honorarios de abogado, sin necesidad de aviso o requerimiento así también quedan automáticamente vencidas cualesquiera otras obligaciones que tengas los suscribientes con el tenedor de este pagaré. La falta de ejercicio de este derecho, no se entenderá como una renuncia del mismo. Los firmantes, endosantes y todas las partes del pagaré, renunciaron a la presentación para pago, demanda, protesto, aviso de protesto y aviso de falta de pago, y además, renunciaron a todo beneficio provisto por ley en cuanto a valuación, avalúo o exención. La parte tenedora podrá prorrogar el vencimiento del pagará, posponer acción en cuanto al cobro, conceder cualquier otra indulgencia y añadir o liberar para cualquier parte primariamente responsable, sin afectar, disminuir o menoscabar el derecho del tenedor en cuanto a recursos contra los firmantes, endosantes y todas las partes del Pagaré.

6. La Escritura Número Cinco (5) Hipoteca en garantía de pagaré, suscrita el 24 de abril de 2002, ante el Notario Enrique R, Adames Soto fue debidamente inscrita en el Registro de la Propiedad.

7. Se le proveyó a los demandados una tabla de amortización.

8. Las partes acordaron que, de encontrarse pagos no efectuados, los mismos se añadirían al final de los años de la hipoteca. Este acuerdo se puso por escrito y se acompañó la factura fechada "diciembre 17, 2014", la que fue firmada por la Sra. Rosario Aponte Ubarri.

9. El demandante realizó las siguientes gestiones de cobro:
   a. Carta de 15 de octubre de 2013.
   b. Factura 17 de diciembre de 2014.
   c. Carta de 24 de junio de 2022.
   d. Carta 7 de octubre de 2022.

10. Hechos admitidos según la Orden emitida por el TPI del 2 de noviembre de 2023[56] que declara Con Lugar la moción solicitando que se den por admitidos los requerimientos de admisiones del 26 de septiembre de 2023:

| 1 | Agosto 2002 | 8,244.32 |
|---|---|---|
| 2 | Septiembre 2002 | 8,244.32 |
| 3 | Noviembre 2002 | 8,244.32 |
| 4 | Junio 2003 | 8,244.32 |
| 5 | Agosto 2003 | 8,244.32 |
| 6 | Diciembre 2006 | 8,244.32 |
| 7 | Agosto 2007 | 8,244.32 |
| 8 | Septiembre 2007 | 8,244.32 |
| 9 | Octubre 2007 | 8,244.32 |
| 10 | Noviembre 2007 | 8,244.32 |
| 11 | Diciembre 2007 | 8,244.32 |
| 12 | Abril 2008 | 8,244.32 |
| 13 | Julio 2008 | 8,244.32 |
| 14 | Septiembre 2008 | 8,244.32 |
| 15 | Octubre 2008 | 8,244.32 |
| 16 | Abril 2009 | 8,244.32 |
| 17 | Septiembre 2009 | 8,244.32 |
| Total | | $140,153.44 |

**b. Hechos materiales que están en controversia:**

1. La parte demandada no realizó los siguientes pagos, ya que entregó cheques sin fondos en el periodo comprendido entre el 2012 al 2017:

| | Núm. Cheque | Fecha: emisión | Cantidad de dinero |
|---|---|---|---|
| 1 | 14618 | 8/7/2012 | $8,244.32 |
| 2 | 14930 | 3/6/2013 | $8,244.32 |
| 3 | 15024 | 4/22/2013 | $8,244.32 |

---

[56] Apéndice del recurso de *Certiorari,* pág. 00230.

| 4 | 15128 | 7/6/2013 | $8,244.32 | |
| 5 | 15252 | 10/6/2013 | $8,244.32 | |
| 6 | 16005 | 1/8/2014 | $8,244.32 | |
| 7 | 15632 | 2/6/2014 | $8,244.32 | |
| 8 | 16209 | 4/8/2015 | $8,244.32 | |
| 9 | 19720 | 6/5/2017 | $8,244.32 | |
| 10 | 19739 | 6/21/2017 | $8,244.32 | |
| 11 | 19760 | 6/21/2017 | $8,244.32 | |
| 12 | 19751 | 7/2017 | $8,244.32 | |
| **Total** | | | **$98,931.84** | |

2. Desde el 1 de junio de 2022, los demandados cesaron de realizar los pagos de la hipoteca, dejando al descubierto los meses adeudados.

3. Los demandados adeudan en total a la parte compareciente la suma de $239,085.28, más intereses y cargos.

**IV.**

Por los fundamentos que anteceden, los que hacemos formar parte de este dictamen, ***revocamos*** la *Sentencia* recurrida, emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina y devolvemos el caso al foro recurrido para que celebre vista evidenciaria conforme con lo aquí dispuesto.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones